## UNITED STATES *v.* WONG SING.

*(District Court, D. Washington, N. D.  June 24, 1892.)*

CHINESE EXCLUSION—INDICTMENT—SUMMARY PROCEEDINGS.

The provision of section 4 of the act of May 5, 1892, that all Chinese persons convicted of being unlawfully in the United States shall be imprisoned at hard labor for a period of not over a year, and thereafter removed from the country, does not, because of this "infamous punishment," render it necessary, under the constitution, to proceed by indictment against all Chinese persons arrested under the act: for it is the evident intent of congress that Chinese shall be removed by summary proceedings as heretofore, and to give effect to all the provisions of the act it should be construed as requiring criminal prosecutions only in cases in which the government is able to procure evidence to justify the same.

At Law.  Information charging that the defendant is a Chinese person found in the United States, and that he is not lawfully entitled to be or remain therein.  Demurrer to the information overruled.

*P. C. Sullivan,* Asst. U. S. Atty.

*W. H. White,* for defendant.

HANFORD, District Judge.  The argument in support of this demurrer is that the fourth section of the act of congress of May 5, 1892, entitled "An act to prohibit the coming of Chinese persons into the United States," requires the imprisonment at hard labor of persons convicted under said law; and as he may, upon conviction, be subjected to an infamous punishment, therefore he cannot be brought to trial on this charge upon an information.  It is true that by the decisions of the supreme court violations of law which may be punished by imprisonment in a penitentiary are held to be infamous crimes; and under the fifth article of the amendments to the constitution of the United States no person can be held to answer for an infamous crime except on a presentment or indictment by a grand jury.  Now, if it is also true, as contended by counsel for the defendant, that every Chinese person found to be unlawfully in the United States must, upon being so adjudged, be punished by imprisonment before being sent out of the country, then it follows as a logical sequence that, by this law, the government has tied the hands of its officers, so that hereafter there can be no such thing as ridding the country of Chinese invaders by proceedings of a summary character, as heretofore, and the courts must patiently proceed to deal with them one at a time, and, after a formal indictment by a grand jury, give to each of them a regular jury trial, and, as fast as the machinery of the law can be operated, fill the prisons of the country with them.  These people have, since the date of the first law enacted to restrict their immigration, demanded jury trials; and now, if by the new law this government has, in effect, acceded to such demand, they may easily defeat the law by coming in such numbers as to paralyze the courts.  The capacity of the courts as to the number of cases which may be tried in accordance with law in a given time is limited.  But the number of Chinese persons who may enter the country clandestinely and require trials, is comparatively un-

limited.   The third section of the act places upon every Chinese person arrested on this charge the burden of establishing by affirmative evidence his right to remain in the United States,—a provision which is inconsistent with the fundamental principles of American jurisprudence, if every one of them arrested must be tried as a criminal for the purpose of punishing him.   The first section of the act continues in force for a period of 10 years all existing laws prohibiting and regulating the coming of Chinese, which laws, as they have been construed by the courts, include provisions for summary hearings and judgments by judges and United States commissioners.   And in the second section of this act the words "justice, judge, or commissioner" are used in such connection as to indicate clearly that in the enactment of this law congress contemplated and intended that the law should still be enforced by summary proceedings as heretofore.   The argument made has nothing to support it, other than the literal wording of the fourth section of the new law. Against it bears the equally plain provisions of the first, second, and third sections of the act, and the important consideration that the law itself, if construed as the defendant contends that it should be, makes it possible for the very people against whom it was intended to operate to defeat it entirely.   To give proper effect to all the provisions of this act it is necessary to give it an interpretation authorizing indictments and criminal prosecutions in those cases in which the government may be able to secure and produce sufficient evidence to justify the same, and at the same time preserving the remedy of summary proceedings in all cases in which criminal prosecutions may be, for any reason, impracticable, and requiring that Chinese persons unable to prove their right to remain in the country, but who cannot be convicted upon a criminal charge, shall be sent to their own country, in accordance with the procedure and practice adopted in enforcing the existing laws.   Such procedure and practice permits an information to be filed by the United States attorney, upon which the accused may be brought to trial, and if, upon such trial, the judge finds the necessary facts, he may issue process for the removal of the accused to his own country.   For the above reasons I will overrule the demurrer, and will proceed with this case in the manner indicated.